to the fullest degree practicable. *See Confederated Tribes,* 746 F.2d at 477.

No. 7184 DISMISSED AS MOOT.

Nos. 6442, 6230, 6810, 6811, 6591, and 6702 VACATED AND REMANDED.

**WASHINGTON STATE DEPARTMENT OF FISHERIES, Washington State Department of Game, and Tulalip Tribes of Washington, Petitioners,**

**v.**

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**Nos. 84–7669, 85–7088.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 1985.

Decided Oct. 15, 1986.

As Amended on Denial of Rehearing Dec. 18, 1986.

D. Anthony Weeks, Asst. Atty. Gen., Olympia, Wash., and Allen H. Sanders, Bell & Ingram, Everett, Wash., for petitioners.

Douglas A. North, Hennings, Maltman, Weber & Reed, Seattle, Wash., for amicus curiae Friends of Whitewater.

William H. Satterfield, General Counsel, Jerome M. Feit, Solicitor, and Joshua Z. Rokach, General Counsel, F.E.R.C., Washington, D.C., for respondent.

Before BROWNING, Chief Judge, ALARCON, Circuit Judge, and STEPHENS *, District Judge.

JAMES R. BROWNING, Chief Judge:

The Tulalip Tribes of Washington ("Tribes") and the Washington State Departments of Fisheries and Game appeal the Federal Energy Regulatory Commission's ("Commission") issuance of eleven preliminary permits for hydroelectric projects in the Snohomish River Basin in Washington.

I

The issues presented are similar to those in *National Wildlife Federation v. FERC*, 801 F.2d 1505 (9th Cir.1986), heard and decided with this case.

*National Wildlife Federation* concerned preliminary permits issued for hydropower projects in the Salmon River Basin; this case concerns preliminary permits granted for projects on the Snohomish, Skyhomish and Snoqualimie Rivers, which meet approximately twenty miles northeast of Bellevue, Washington. These rivers collectively form the Snohomish River Basin, stretching from Stevens Pass and the Snoqualimie National Forest to Puget Sound. The Snohomish Basin supports substantial "wild" fisheries—fish produced through natural production rather than in manmade hatcheries. The Snohomish is one of three rivers in the Puget Sound region managed for natural salmon production.

The value of the fishery on Snohomish stocks in 1982 was estimated at over $15 million dollars. The fishery of the Tribes under their treaty-secured fishing rights in the Basin is valued at almost $2 million dollars annually. Unlike many other river systems in the region, the Snohomish River Basin is virtually pristine; only three hydroelectric power projects are in operation or under construction. The Snohomish Basin is highly valued for its wildlife and for scenic and other recreational uses.

Like petitioners in *National Wildlife Federation*, petitioners in this case challenge the Commission's failure to prepare a comprehensive plan for development of the entire river system, to address the petitioners' environmental concerns, and to coordinate the study and review of proposed projects. Petitioners contend that in issuing the preliminary permits without taking these steps the Commission violated the Federal Power Act, 16 U.S.C. §§ 791a–793, 796–818, 820–825u (1982); the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4370a (1982); the Pacific Northwest Electric Power Planning and Conservation Act ("Northwest Power Act"), 16 U.S.C. §§ 839–839h (1982); and the Fish and Wildlife Coordination Act ("Fish and Wildlife Act"), 16 U.S.C. §§ 661–667d (1982). The Tribes also claim the Commission's actions contravene federal trust responsibilities and obligations under the Treaty of Point Elliot, 12 Stat. 927 (1855).

We incorporate by reference the portions of the opinion in *National Wildlife Federation* dealing with issues also raised in this case. We add the following discussion of a Northwest Power Act claim that differs somewhat from the issue raised under this statute in *National Wildlife Federation*, and of a Fish and Wildlife Act claim not raised in *National Wildlife Federation*.

II

The circumstances leading to the Commission's action, the course of the administrative proceedings, the evidence submitted to the Commission, and the substance of the Commission's decision and reasoning are substantially the same in the two cases.

In both cases the Commission was asked to develop a comprehensive plan for hydroelectric development in the river system before issuing preliminary permits and to

---

* Honorable Albert Lee Stephens, Jr., Chief Judge Emeritus, United States District Court for the Central District of California, sitting by designation.

establish guidelines and require collection of data necessary for cumulative impact studies. In both, hearings were held on these requests. In both, all of the evidence submitted to the Commission supported the need for adoption of the requested procedures. If anything, the evidence in this case was stronger than that submitted in *National Wildlife Federation*.[1]

As in *National Wildlife Federation*, there is no indication the Commission considered any of this evidence. The Commission did not act upon the requests for development of a comprehensive plan and coordinated cumulative impact studies in either case. Instead, in both cases the Director simply issued standard permits on a case-by-case basis. In both cases, the Commission rejected the appeals from the issuance of the permits in essentially the same language. *Compare Capitol Devel-*

*opment Co.*, 27 F.E.R.C. ¶ 61,423 (1984) *with Lester Kelley*, 25 F.E.R.C. ¶ 61,410 (1983).

For the reasons stated in *National Wildlife Federation*, we conclude the Commission erred by rejecting petitioners' proposals without stating reasons supported by the record.[2]

### III

■ Petitioners in *National Wildlife Federation* contended the Commission violated the provision of the Northwest Power Act which requires consideration of the Northwest Power Planning Council's Columbia River Basin Fish and Wildlife Program, at "each relevant stage" of the licensing process, 16 U.S.C. § 839b(h)(11)(A)(ii). However, this provision applies "solely to fish and wildlife, including related spawning grounds and

---

1. For example, Richard Rutz, representing the Seattle Audubon Society and the Mountaineers, testified to the need for cumulative impact studies. Jeff Opdycke of the U.S. Fish and Wildlife Service testified to the inadequacy of the case-by-case approach to measure cumulative impacts, pointing out that the Endangered Species Act, NEPA and the Federal Power Act required the study of cumulative impacts. He noted the Fish and Wildlife Service's obligation to identify the impacts of hydropower development could not be effectively discharged "without a comprehensive plan which looks at the industry's cumulative impact...." Paul Majkut of the Washington State Department of Fisheries and Game testified that the proposed developments would have "many cumulative impacts which cannot be properly evaluated on a project-by-project basis." Lorraine Bodi of the U.S. National Marine Fisheries Service testified to the need for a basin-wide approach to the proposed projects.

   David Somers, Fisheries Biologist for the Tulalip Tribes, submitted a lengthy affidavit accompanying the petition for coordinated study and comprehensive planning, detailing "various reasons why consolidated review of the numerous projects proposed for the Snohomish Basin is essential...." Also accompanying the petition was an affidavit from Alan Groves, Fishery Biologist with the U.S. National Marine Fisheries Service, in which he stated that Fisheries Service could not satisfy its statutory obligations "if exemptions and preliminary permits are issued on a staggered, case-by-case basis." Somers submitted a second affidavit with the peti-

tion for rehearing reiterating why comprehensive planning and cumulative impact studies were needed, but also explaining that because of the nature of the Snohomish River Basin and the number and kind of proposed developments, coordination and study of cumulative impacts would be the "most economical, efficient, and time-saving means of evaluating the current and future hydroelectric development proposals for the Snohomish Basin...."

2. The Fish and Wildlife Act, 16 U.S.C. § 661, provides that "wildlife conservation shall receive equal consideration and be coordinated with other features of water-resource development programs...." Section 662 governs the procedure applicable to the "equal consideration" requirement:

   [W]henever the waters of any stream or other body of water are proposed or authorized to be impounded, diverted ... or modified for any purpose whatever ... by any department or agency of the United States, or by any public or private agency under Federal permit or license, *such department or agency shall first consult* with the United States Fish and Wildlife Service, Department of the Interior, and with the head of the agency exercising administration over the wildlife resources of the particular State ... with a view to the conservation of wildlife resources....

   16 U.S.C. § 662(a) (emphasis added).

habitat, located on the Columbia River and its tributaries." 16 U.S.C. § 839b(h)(1)(B). It is therefore inapplicable to this case.

Petitioners in this case contend the Commission failed to comply with the provision of the Northwest Power Act which mandates creation of a plan applicable to the entire region, giving "due consideration" to fish and wildlife. 16 U.S.C. § 839b(e)(2). We decline to reach this issue for the same reason we declined to reach the similar issue presented in *National Wildlife Federation*—in all likelihood the questions presented will be mooted or significantly altered by action taken by the Commission on remand.

## IV

 On appeal to the Commission, petitioners argued the Director's action violated the Fish and Wildlife Act in several ways. Petitioners have abandoned all but one of these arguments. In this appeal they contend only that the Commission violated the consultation requirement of the Act.[3] They argue that issuing permits on a case-by-case basis without first developing a comprehensive plan imposing uniform study guidelines, or requiring permittees to gather data useful for measuring cumulative impacts, made it impossible as a practical matter to conduct the consultations contemplated by the statute.

As with the Federal Power Act claims, the record contains substantial support for petitioners' position under the Fish and Wildlife Act, and no evidence to the contrary. The Commission simply did not address petitioners' contention. We do not hold the Fish and Wildlife Act requires the

3. For example, the Washington State Departments of Fish and Game and the Tribes submitted a detailed proposal stating reasons why useful consultation would be severely hampered unless the Commission coordinated further proceedings and studies before issuing preliminary permits. The U.S. National Marine Fisheries Service concurred in the proposal. The Secretary of the Interior's motion to intervene in support of the petition for consolidation and coordination stated his opinion that "the comprehensive and intensive pattern of development proposed for the basin" made consolidation and coordination imperative.

Commission to develop a comprehensive plan, coordinate proceedings, or develop uniform study guidelines before issuing permits; we do hold the Commission must consider and respond to petitioners' contentions on the basis of the record.

VACATED AND REMANDED.

## ORDER

The respondent has advised the court the permits in project numbers 7512 and 7834 were surrendered or cancelled prior to oral argument. The appeals pertaining to these two project numbers are hereby dismissed as moot.

There is some indication in the legislative history that Congress intended consultation to occur early in the planning process. *See, e.g.,* H.R.Rep. No. 2183, 85th Cong., 2d Sess. 1, 2 (1958) (bill would remedy problem of consultation occurring too late in administrative process to affect planning); S.Rep. No. 1698, 79th Cong., 2d Sess. 1, 2 (1946) (consultation should occur "not alone after flood control, irrigation, or impoundment projects have been started but also in connection with the initial planning for such projects"); H.R.Rep. No. 1944, 79th Cong., 2d Sess. 1, 3 (1946) (same).